IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| MICHAEL LYNN VAUGHN | * | |
| | * | |
| | * | Criminal Action No.: 17-cr-125-PX |
| v. | * | Civil Action No.  21-cv-1428-PX |
| | * | |
| UNITED STATES OF AMERICA, | * | |
| | * | |
| | * | |
| | *** | |

## MEMORANDUM OPINION

Petitioner Michael Lynn Vaughn moves to vacate his conviction and sentence pursuant to 28 U.S.C. § 2255, asserting he was denied effective assistance of counsel at trial.  ECF No. 160 at 4–5.  The issues are fully briefed, and no hearing is necessary.  *See* D. Md. Loc. R. 105.6.  For the following reasons, the motion is denied.

### I. Background

On March 1, 2018, a jury convicted Petitioner Michael Lynn Vaughn, of one count of conspiracy to commit bribery, in violation of 18 U.S.C. § 371 and four counts of bribery in violation of 18 U.S.C. § 666(a)(1)(B).  ECF No. 92.  The evidence at trial reflected Vaughn's participation in a bribery scheme surrounding the the Sunday liquor laws of Prince George's County, Maryland, when he served as representative in the House of Delegates.  *United States v. Vaughn*, 815 F. App'x 721, 732 (4th Cir. 2020) (per curiam).  While in Office, Vaughn held many leadership positions, including service as Deputy Majority Whip in the Maryland House leadership from 2006 to 2017 and continuously on the Economic Matters Committee.  *Id.*  Vaughn also played a prominent role in several committees focusing on liquor and alcohol laws in the county, including the Alcoholic Beverages subcommittee and the county delegation's Alcoholic Beverage work group.  *Id.*

Prior to taking office, Vaughn served as a part-time liquor inspector, during which time he met his future co-defendant, David Son, also a part-time liquor inspector. *Vaughn*, 815 F. App'x at 723. Son, in turn, was friendly with Jin Suk Seo, a prominent leader in the Prince George's County Korean Chamber of Commerce ("the Chamber") and a liquor store owner in Prince George's County. *Id.* Vaughn also became acquainted with liquor store owners and Chamber members Shin Lee and Young Paig. *Id.* At the time, Prince George's County banned liquor store sales on Sundays—a law that, unsurprisingly, liquor store owners desperately wished to change. Son, Seo, Paig, and Lee ("the Chamber members") soon hired attorney Matthew Gorman to help draft a bill changing the Sunday liquor laws and to lobby the Maryland legislature to pass it. *Id.* at 724. The Chamber members along with Gorman then began to scheme for ways to pass the Sunday sales legislation.

In February 2014, a bill to change the Sunday liquor laws was introduced. *Vaughn*, 815 F. App'x at 724. Vaughn, a member of the House Economic Matters Committee at the time, voted against the bill, and so the law remained unchanged. *Id.* Soon after, the Chamber members approached Vaughn for assistance—namely, his vote in favor of changing the Sunday liquor sale laws and his influence on the votes of other county delegates. *Id.* Vaughn agreed to help, but only in exchange for payment. *Id.* The Chamber members agreed to compensate Vaughn $20,000 cash paid in four equal installments. In return, Vaughn agreed to vote in support of passing Sunday sales legislation in the upcoming session. *Id.*

In February 2015, the Sunday Sales Bill ("the Bill") was announced to the House. 815 F. App'x at 724. The Bill allotted 100 permits to be distributed to liquor stores to allow liquor sales on Sundays. *Id.* Prince George's County Board of License Commissioners was in charge of distributing the permits. *Id.* Around this time, Vaughn requested additional payment from Son,

Seo, and Lee, in exchange for convincing his peer delegates to support the Bill. *Id.* Vaughn ultimately persuaded Seo to pay him an additional $2,000 cash in exchange for these promised efforts. *Id.*

In Maryland, the county delegation votes on bills before the House. *Id.* The House, in turn, traditionally defers to the vote of the local delegation as a "local courtesy." *Id.* In this case, the Law Enforcement subcommittee of the Prince George's county delegation voted to approve the Bill. *Id.* Vaughn, for his part, was never a member of the Law Enforcement subcommittee. *Id.* On March 13, 2015, the full county delegation then voted to approve the Bill. This time, Vaughn changed his vote to approve the Bill. *Id.* The Bill then moved to the Economic Matters Committee of the House, where Vaughn again voted to pass it. *Id.* Finally, the Bill moved to the House, where Vaughn again voted to approve it. *Id.* The Bill passed in the House, then passed in the Senate, and was signed into law shortly thereafter. On April 22, 2015, after the Bill had passed, Son, Paig, and Lee paid Vaughn an additional $5,000 as "appreciation" for the Bill's passage. *Id.* at 725.

Thereafter, Vaughn continued to assist Paig, Lee, and Son in gaining a competitive advantage over competing liquor stores. Before the initial grant of permits in October 2015, Vaughn wrote a letter to the Liquor Board opposing the grant of permits to directly competing liquor stores with Paig and Lee's businesses. *Vaughn*, 815 F. App'x at 725. After doing so, Vaughn then requested a $5,000 "advance" on his installment payments from Son, Paig, and Lee. *Id.* On November 10, 2015, the three members met with Vaughn at a restaurant and paid him the $5,000 advance in exchange for his opposition to new bills that sought to increase the number of liquor permits granted under the Bill. *Id.* Unknown to the other conspirators, Gorman had begun cooperating with law enforcement. *Id.* Gorman tipped off a federal law enforcement

agent about the meeting, who sat inside the restaurant and observed the encounter.  *Id.*  Law enforcement then launched an investigation into the bribery scheme.  *Id.*

Soon after, Son and the other Chamber members evidently changed their minds about opposing the upcoming bills to expand the number of Sunday liquor permits.  The Chamber members now wanted to increase the number of permits by five ("Additional Sunday Permits Bill").  *Id.*  On February 26, 2016, before the Additional Sunday Permits Bill went to a vote, Vaughn met with Son and Gorman.  *Id.*  Gorman offered to pay Vaughn $2,000 in exchange for changing his vote to now support the Additional Sunday Permits Bill.  *Id.*  Vaughn accepted, and Gorman paid him the $2,000 in cash.  *Id.*

With Vaughn's support, the Additional Sunday Permits Bill became law.  *Id.*  On April 11, 2016, Gorman, wearing an FBI wire, paid Vaughn $5,000 in prerecorded FBI funds as compensation for his vote.  *Id.*  Immediately after the meeting with Gorman, the FBI confronted Vaughn and interviewed him, during which he admitted that he accepted the money as "appreciation for the Sunday Sales legislation."  *Id.* (alteration omitted).

On March 6, 2017, a federal grand jury returned an indictment charging Vaughn with one count of conspiracy to commit bribery, four counts of bribery, and three counts of wire fraud.  ECF No. 1.  A jury trial on the four bribery counts and single conspiracy count commenced on February 15, 2018, returning a conviction on all five counts on March 1, 2018.  This Court sentenced Vaughn on September 4, 2018, to 48 months of imprisonment as to each count, to run concurrently.  ECF No. 126.  The Fourth Circuit Court of Appeals affirmed Vaughn's conviction and sentence on June 9, 2020.  ECF No. 152.

On June 8, 2021, Vaughn filed this Petition pursuant to 28 U.S.C. § 2255, alleging that he received ineffective assistance at trial because defense counsel had not made cogent arguments

about the voting process and failed to offer certain testimonial evidence. ECF No. 160. For the following reasons, the Petition must be denied.

## II.     Standard of Review

Under 28 U.S.C. § 2255, the Petitioner may move to vacate a conviction and sentence "imposed in violation of the Constitution or laws of the United States . . . or is otherwise subject to collateral attack." 28 U.S.C. § 2255; *see also Hill v. United States*, 368 U.S. 424, 426–27 (1982). Importantly, a § 2255 Petition "may not do service for an appeal." *Grant v. United States*, No. RDB-19-3341, 2022 WL 409482, at *2 (D. Md. Feb. 10, 2022) (quoting *United States v. Frady*, 456 U.S. 152, 165 (1982)). "[E]rrors that could have been but were not pursued on direct appeal" may not be raised in a § 2255 motion unless the movant demonstrates cause and actual prejudice or that "a miscarriage of justice" would result from barring the motion. *United States v. Pettiford*, 612 F.3d 270, 280 (4th Cir. 2010) (*United States v. Mikalajunas*, 186 F.3d 490, 492–93 (4th Cir. 1999)). However, any "failure to raise an ineffective assistance of counsel claim on direct appeal does not bar the claim from being brought in a later, appropriate proceeding under § 2255." *Massaro v. United States*, 538 U.S. 500, 509 (2003).

To establish ineffective assistance of counsel, the petitioner must show both that her attorney's performance fell below an objective standard of reasonableness and that she suffered actual prejudice. *Strickland v. Washington*, 466 U.S. 668, 687 (1984). A strong presumption exists that counsel's performance fell within a wide range of reasonably professional conduct; accordingly, courts remain highly deferential in scrutinizing counsel's performance. *Id.* at 688–89; *Bunch v. Thompson*, 949 F.2d 1354, 1363 (4th Cir. 1991). To demonstrate actual prejudice, the petitioner must show a "reasonable probability" that but for the deficiency, the result of the proceeding would have been different. *Strickland*, 466 U.S. at 694. A reasonable probability is

5

one "sufficient to undermine confidence in the outcome" of the proceeding.  *Id.*  Moreover, when no prejudice results from the claimed errors of counsel, the Court need not reach whether the attorney's performance was deficient.  *Id.* at 697.

### III.    Analysis

Vaughn argues that he was denied effective assistance because defense counsel inadequately explained the Maryland committee system to the jury and failed to call two witnesses:  Jody Chilson, bill drafter and administrator to the Prince George's County Alcohol Beverage work group, and Dereck David, Chairman of the Economic Matters Committee and member of the Prince George's County Delegation and Prince George's County Alcohol Beverage work group.  ECF No. 165 at 2.  According to Vaughn, had the jury understood the Maryland committee system better and had counsel called the witnesses who would have demonstrated that Vaughn had "no vote on the passing of the Sunday Sales Bill," he would not have been convicted.  ECF No. 165 at 2.

Having reviewed the entire record, Vaughn has failed to demonstrate that he meets either prong of the *Strickland* test.  First, as to counsel's performance, Vaughn asserts that his counsel failed to explain the "more critical information" about the Maryland committee system.  He also characterizes defense counsel's explanation of the system as "confusing" and "hard to understand."  ECF No. 160 at 4–5.  But Vaughn does not identify what "more critical" information counsel omitted or how it would have been helpful to his defense.  And contrary to Vaughn's assertions, the record shows that counsel's opening statement, cross examination of Government witness Anette Haldeman, and defense counsel's closing argument largely centered on the Maryland committee system.  ECF Nos.  164-1 at 1, 68–73; 164-2; 164-3 at 11–16.  Additionally, the record supports that defense counsel robustly investigated the case, filed

pretrial motions, cross examined witnesses, lodged timely and vigorous objections, and presented cogent arguments on Vaughn's behalf at every stage of the proceedings.  *E.g.*, ECF Nos. 21; 27; 28; 37; 44; 141–149.  That Vaughn perceived counsel's explanation of the Maryland committee system as hard to follow is not enough to demonstrate that counsel's performance fell below an objective standard of reasonableness.  *See Strickland*, 466 U.S. at 688.

Alternatively, even if the identified failures could somehow amount to ineffective assistance, Vaughn has failed to demonstrate that he has been prejudiced by such omissions.  Vaughn's prejudice theory is that the two witnesses would have demonstrated he had, essentially, "no vote in the Sunday Sales Bill."  ECF No. 165.  This is because the Law Enforcement subcommittee recommendation almost always determines the fate of a bill and so the bill was destined to pass with or without his support.  Thus, Vaughn maintains he could not be convicted of bribery if his official action had no effect on the outcome.  *Id.*

As to this, Vaughn has simply repackaged the same contentions he raised on appeal.  *See Vaughn*, 815 F. App'x at 729.  In rejecting this claim, the Fourth Circuit explained:

> The problem for Vaughn is, even if he "was going to vote for *some kind of* [Sunday sales] legislation," . . . the evidence presented at trial strongly suggested that Son, Paig, and Lee held sway over him.  For example, when the co-conspirators agreed to pay Vaughn $20,000 in installments, it was not clear what form of Sunday sales legislation Vaughn would support. The jury could have believed that it was important to Son, Paig, and Lee that the permits be capped, and that Vaughn intended to be influenced as to the precise contents of the bill. When Vaughn needed an advance of $5,000, he agreed to oppose bills that would otherwise expand the permits. A jury could have reasonably believed that, before this conspiracy when Vaughn allegedly supported Sunday Sales legislation, Vaughn would have favored such permit expansions. Then, when his co-conspirators suddenly asked him to get on board with the Additional Permits Bill that added only five permits, he did so—again, changing his position. Vaughn even wrote a letter to the Liquor Board, specifically stating that a close competitor of Lee's store should not receive a Sunday permit. This is something that would make little sense for Vaughn to do, *unless* he intended to be influenced by his payors.

*Id.* (internal citation omitted).  Considering the totality of the evidence, no "reasonable probability" exists that the jury would find additional testimony about how any given committee may influence votes on legislation enough to undermine the jury verdict.  *See Strickland*, 466 U.S. at 694–95 (potential prejudice from failure to call witnesses should be considered with the totality of the evidence); *United States v. Crum*, 65 F. Supp. 2d 348, 351 (D. Md. 1999) (finding no prejudice from failure to call three witnesses when "ample independent evidence outside the testimony" would have resulted in same verdict); *see also Harris v. United States*, No. 2:08cv79, 2009 WL 6057204, at *9 (N.D.W. Va. Nov. 5, 2009) (rejecting ineffective assistance of counsel claim when argument was "merely a re-framing of the same arguments, already raised on appeal" and rejected).  As the Fourth Circuit highlighted, robust evidence permitted the conclusion that his positions on legislation were indeed affected by his "payors."  The two witnesses, if called, would have done little, if anything, to undermine the strength of the evidence supporting the jury's verdict.

In sum, Vaughn has failed to demonstrate that counsel's performance was deficient, or that he suffered prejudice.  Accordingly, his motion to vacate must be denied.

## IV.     Certificate of Appealability

Pursuant to Rule 11(a) of the Federal Rules Governing Proceedings under 28 U.S.C. §§ 2254 or 2255, the court is also required to issue or deny a certificate of appealability when it enters a final order adverse to the petitioner.  A certificate of appealability is a "jurisdictional prerequisite" to an appeal from the court's order, *United States v. Hadden*, 475 F.3d 652, 659 (4th Cir. 2007), and may issue "only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2).  Where the court denies the petitioner's motion on its merits, a petitioner satisfies this standard by demonstrating that "reasonable jurists would

find the court's assessment of the constitutional claims debatable or wrong." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000); *see also Miller–El v. Cockrell*, 537 U.S. 322, 336–38 (2003). Vaughn does not satisfy this standard. Accordingly, a certificate of appealability will not issue.

### V.     Conclusion

For the foregoing reasons, Vaughn's motion to vacate his sentence under 18 U.S.C. § 2255 is denied. A separate order follows.

March 28, 2022                                                                    /s/
Date                                                                                    Paula Xinis
                                                                                             United States District Judge